Case number 2016-5289, 2016-5290, Coy G Cox Jr v. Specialty Vehicle Solutions LLC. We're going to have to exceed 15 minutes to resign. Mr. Larson. Thank you. Good morning, your honors. Good morning. Keith Larson for the appellant Coy Cox. I'd like to request three minutes for rebuttal, please. All right. May it please the court. At bottom, this case can be resolved by a simple and straightforward reading of the bankruptcy court's order. In preparing for today, I was reminded of a quote from the late Justice Scalia, that words have meaning and their meaning doesn't change. The meaning of two words in the bankruptcy court order control this case, vacate and resume. We have an order vacating the stay, permitting Cox to resume a specific complaint in a specific case with a specific case number. There was not to resume a nebulous cause of action, not to refile, but to resume and prosecute a specific lawsuit. The problem, though, isn't it that resume is kind of the difficult word, because when you get to stays, they talk about annulling or they talk about vacating, and resume becomes a little ambiguous on the thing. If the court had annulled the stay, it seems it would be clear that it would take it to write back as if the stay had never existed, just as an annulment does. If the court vacates the stay, then arguably that gives you the right to file another action, which ultimately you did here on the thing. But doesn't resume create sort of an ambiguity? What I'm saying not cuts against you or for you, but that's part of the problem in the case, isn't it? No, Your Honor, I would disagree because I would say there would be an ambiguity if the order said resume a claim or resume a cause of action, but it's very specific as to what is to be resumed. What's to be resumed is a complaint and a cause of action in a case entitled Coxby Specialty Vehicle Solutions that has a case number. So I would agree it would have been vague if it had said resume your claim. But it's not saying resume your claim. It's saying resume this case. And as we pointed out in our briefs, vacate is essentially a synonym for annul. They mean the same exact thing. And this fits neatly within Section 362D of the Bankruptcy Code. Because annul, a synonym for vacate, allows a bankruptcy court to, I'm sorry, 362D allows the bankruptcy court to annul the stay to provide this retroactive reinstatement. And the appellant's position is that the district court's decision conflicts with 362, and therefore we're asking for a reversal. And even under EESLY, while our case factually is entirely different from EESLY, the Sixth Circuit recognized that annulment retroactively validates a complaint. And this is precisely why the 30-day grace period under Section 108C of the Bankruptcy Code does not apply to annulments. Section 108C only applies if the stay is terminated or if the stay expires. Where there's an annulment, there's quite simply nothing to refile. So there's no 30-day grace period to refile something if the stay is annulled. So we believe that the district court also erred by so broadly reading EESLY. And I'd like to drill down a little bit into the difference between this case and the EESLY case. Here we have a valid bankruptcy court order that annulled the stay. There was no such order entered in EESLY. In EESLY, the plaintiff went to the bankruptcy court and asked the bankruptcy court to allow it to file a claim so that it could be treated properly in the Chapter 11 plan and to modify the stay to continue with its state court lawsuit. The plaintiff never asked for annulment. What the bankruptcy court did in the EESLY case is that it allowed the claim, but it didn't allow for the modification of the stay. And I believe the court's reasoning, if I'm reading properly, is that there was no need to continue the state court lawsuit if the claim was going to be allowed in the Chapter 11 plan. And EESLY talks about how the Chapter 11 plan provided for these cases, these personal injury cases, to be paid through the plan by insurance proceeds. So we have the claimant in that case being treated under the plan. And it was not until after the plan had been confirmed and the bankruptcy court case was dismissed that the plaintiff went back to state court and sought annulment. And the Seventh Circuit in the companion case, Judge Easterbrook, found that the bankruptcy court had lost jurisdiction at that point to enter any sort of order because the Chapter 11 case had been confirmed and the case had been dismissed. So by the time the defendant in EESLY files its motion to dismiss, unlike here, we have the plaintiff's motion in bankruptcy court to modify the stay was actually denied. And the Seventh Circuit ruled that the bankruptcy court could not annul the stay. So we have no order in the EESLY case annulling the stay. Here it's the complete opposite. Coy Cox files this lawsuit. Unbeknownst to him, the defendant is a debtor in bankruptcy. Coy Cox then finds out that the debtor is in bankruptcy, goes to the bankruptcy court, and the parties enter into an agreed order, which was actually drafted by SVS, stating that the stay is vacated, which means annulled, allowing him to resume with his case. So we have that bankruptcy court order. I accept this argument that you're making, but you haven't once mentioned the problem with the case. And that is that that agreed order and your motion spoke about a pre-filed, spoke about the case as if it had been filed before the petition. And the relief you asked for was not annulment. Now, it may very well be that in the end that's what you got, but don't you think you have to address those problems head on? Absolutely, Your Honor. And I understand that it's the appellee's position that somehow the bankruptcy court was misled or there was not proper information given to the bankruptcy court in the application. But first of all, it was technically a pre-petition claim. So I don't think it's entirely inaccurate what was put in the notice. But we've conceded in our briefs that it was a scrivener's error. But the scrivener's error was in the notice to the parties. This is a notice letting parties know that this matter is coming before the court and if you want to object, you have 20 days to object. It was in the notice. It wasn't in the actual motion itself. And that's important because the parties themselves knew the chronology of the events. SVS can't sit here with a straight face and say, well, we didn't know that you filed the lawsuit after we filed our bankruptcy court case. So the parties knew. So if there was a chance that anyone would have been misled by the notice, it would have only been the parties. And the parties knew the chronology of the events. The court relied upon the motion. And the motion itself does not mention that this was a – Did the court rely on the motion or the order? Well, I think what the order itself says in the preamble to the bankruptcy court order, it says upon consideration of the motion, it is ordered blank. So I think if you're just going to take the bankruptcy court order at its straightforward plain meaning, it relied upon the motion. What did you ask for in the motion? I think you're better off with the other answer. But what did you ask for in the motion? Well, what we were asking for in the motion was relief from the bankruptcy stay. And we attached to it the proposed order. And the proposed order in there, to Your Honor's point, did ask for a vacation of the stay and did ask to allow us to institute or resume the state court action. And somewhat ironically, when the parties were negotiating this agreed order, SVS is the party that withdrew the word institute. So now Cox is in sort of this really difficult spot where if you read the bankruptcy court order, if you take out that word institute, it almost seems like if Cox were to file a new lawsuit, it would be in violation of that order. And with the word resuming there, there was nothing else for him to do. So SVS drafted the order. SVS has taken some varying positions on this. But it's important to note that they were the author of that important part of the order. And for that reason, it cannot be said that they were misled and it's our position that the bankruptcy court wasn't misled. The Easley decision is also distinguished in this case because in Easley the court found that the debtor did nothing to lull the plaintiff into believing that the debtor would not rely on the stay. And here that's exactly what the debtor did. The debtor, the defendant, entered into this agreed order that said you can resume your case and that lulled Cox into believing that he could resume his case. And then 35, 40 days go by and they file a motion to dismiss and say, oh, by resume we really meant refile. So I think the facts here are actually an opposite of Easley. So this court doesn't necessarily need to rethink Easley in order to rule in our favor. Another issue that was raised by SVS in their brief is whether or not this should be reviewed on a de novo standard, whether or not we properly preserved error. I just want to ask you, you seem very well versed in the difference between a null, etc., but why didn't your petition request a nullment? Well, I think if you read the petition, it incorporates the proposed order, or at least it attaches the proposed order. I don't know if incorporates the right word, but it did attach a proposed order. And the motion itself is sort of a bare bones. We're letting the parties know this is coming in front of the court. In fact, I think it says here's the proposed order. If nobody objects, we're going to submit this to the court. So I think perhaps inartfully drafted the motion is, but I think it still goes to the point that what SVS was clearly, or I'm sorry, what Cox was clearly asking for was a vacation of the stay. And to get back to the point about whether this should be reviewed de novo or not, I would just point the court's attention to our response to the motion to dismiss its record entry 14. And there Cox made very clear that the bankruptcy court annulled the stay. It retroactively validated the stay. The parties were to resume their case. The suit was no longer void. And the bankruptcy court knew full well at that point that it was annulling a post-petition action. And those were all raised in the initial motion to dismiss. And with that, your honors, unless you have any other time, I will just rest for my reply. Thank you. You may proceed, counsel. Thank you, your honors. May it please the court, counsel. Your honors, I think one of the key things that must be addressed up front here is not only appellant's brief, but also most of the argument that was made here today, and that is that they are impermissibly mingling arguments and evidence that were presented to the district court for decision on the dismissal and then on a Rule 59 motion or on appeal. I think it's important that when we consider and grant a de novo review of the trial court's dismissal of both the first and second suit, that you look at the evidence that was presented to the judge at that time. Most of this evidence that has been argued both in briefs and here today came in under the Rule 59 motion. It was not presented to the judge at the time he decided to dismiss those actions. Now, Judge Tappar on the Rule 59 motion declined to consider most of that information and evidence simply because it was all available to the appellee prior to ruling on the motion to dismiss. And he found under the Sixth Circuit Rule of Leisure Caviar that it was not proper for them to present new evidence that could have been presented originally. So when we talk about a great deal of what he's presented here, none of that was presented to the district judge. Which crucial portions were not presented? Well, all of this information, for starters, about how the agreed order came to be drafted, who did what with the agreed order, how that was... It did have the order, but he's argued here today or pointed out here today that SVS was the alleged author of this order. First, I think that's not entirely accurate based upon if you compare the order that was proposed and the order submitted, but the affidavits that were presented later and the emails that were presented later, none of those were presented to the district court initially. There were a lot of other arguments in his brief that he has chosen not to bring up here today, such as the judicial estoppel, which I'm not going to take the court's time to go into because I don't think that's the crucial issue. Well, what happens if the order is ambiguous on its face? In terms of how the district court should have handled it? Yes. Well, what was presented to the district court was simply the order that says, the motion that said we've come forward for pre-petition, we've filed a pre-petition complaint. We're asking that the stay be vacated and that we be allowed to resume that case, continue with what was proceeding. And you have an order that allows that to resume. I think the district court, when confronted with that, it is ambiguous. It's extremely ambiguous. But at that point in time, I think the burden is on the creditor, plaintiff, what have you in the case to obtain the proper relief before going forward. Because otherwise, under Easley and the Sixth Circuit and most of the circuits, the filing of the initial complaint was void. There is no question when the complaint was filed, the automatic stay was in place. So absent clear relief from that stay, I don't see how it could have gone forward or the district judge could have ruled any other way. The order was entered, so something was done. And the parties relied on it in terms of their understanding. So I don't see how the district court can ignore it. I mean, I'm asking the question, what does the district court do when the order is ambiguous on its face? I think what Judge Depard did in this case was look at it as though just that the stay had been lifted and allowed us to come back and make... But the judge relied on Easley, and Easley has nothing to do with this case, in my view. Easley is completely different. And the judge said, well, there's Easley and you lose. Without, I'm not even sure the judge ever interpreted the order. And I can't answer that because I agree it's not specifically outlined in his ruling whether he did or did not. But the fact remains, if you look at what occurred in the bankruptcy court, despite what is said here today, we have submitted an affidavit from Jennifer McAtee, who was the bankruptcy attorney for the debtor, who said in all of her conversations with Cox's bankruptcy attorney that she understood it to be a pre-petition action. She did acknowledge she removed the word institute from the order because she saw no reason to institute a pre-petition action. And clearly stated in her affidavit that had it been advised to her that this was actually a post-petition suit, her response would have been quite different. She filed, SVS in the bankruptcy, filed an objection to the motion on some of the very grounds that have been discussed here today, in that the relief sought in the notice and application, I'm not even sure there is a motion per se, but notice and application, was very vague and unclear. That Cox had not provided any clear facts to support the relief he was requesting or even specifically stated what relief he was requesting. Then how do you sign an order? How do you stipulate to an order? You stipulate to an order on the belief that you think someone is resuming a pre-petition action. And that was inaccurate information. But in that regard, part of the problem may be here that the bankruptcy was in Pennsylvania, right? New Jersey. New Jersey, yeah, but the tort action was not. Correct. And so once the tort action was filed, you had a tort attorney. Correct, myself. So you're responsible for the knowledge of both, aren't you? The tort attorney certainly knew when the case was filed. Yes. Now, I was the tort attorney. As the tort attorney in the Kentucky case, I was not copied on any of the bankruptcy pleadings. I was not made aware. I was not presented with any of that information. Certainly if they had provided a courtesy copy or included me on the captions, I would have advised there's an error here. That did not occur. But your client is the principal, the person that has hired both attorneys. And that's true. But I'm not sure it's the responsibility of the debtor in the bankruptcy court to go to a creditor and say, are you sure this is actually the relief you want? The creditor came there and said, I want relief from a pre-petition action. And I think even if you look and even if you treat the order as annulling the stay, the order says nothing about granting retroactive relief. And if you look at the various cases that have come out from the other circuits, and even the Sixth Circuit addressing annulment, they all say that when a bankruptcy court annuls a stay, they can grant retroactive relief. There's nothing that says annulment must grant retroactive relief. This order says nothing about retroactive relief. Retroactive relief wasn't even requested. There's no indication of retroactive relief to what? There's no indication that the violation was? Are you saying that if the order had said annulled rather than vacated, that there'd be a problem with the order? No, I'm saying if the order had said that the stay was annulled, that retroactive relief was granted, and the complaint was validated. I said, are you saying that if the order was exactly as drafted except it said annulled and not vacated, that you would have an argument that it was annulled but they still couldn't do anything? Because it didn't have the magic word retroactive? I'm not sure that an order that says annulled without specific granting of retroactive relief provides retroactive relief. Retroactive to when? But that's the point. I mean, that's the nature of the annulment. It said you can resume your lawsuit. I mean, that's a fair reading that it means it's annulled, resume your, go ahead. And I think the problem is what was pointed out earlier in that that was not the relief that was sought. The relief was pre-petition relief. And the order was amended by SBS to reflect the relief requested. Well, the order, that could apply to both. It could apply to pre-petition and it could apply to an unknowing post-petition. Except that part of the reason that one must file a motion and specifically ask for specific relief and what you're looking for is to put the debtor on notice of what's being sought and to give the debtor an opportunity to properly object and to have a hearing if need be. I mean, look, it's not like there was this wall, this complete wall. What was negotiated, as I understand it, I could be wrong, in the bankruptcy, is that the plaintiff was going to confine himself to the policy. And certainly, you know, what would bankruptcy, clearly there was an overlap between the products case and the bankruptcy case. If that was the resolution, okay, you're going to confine yourself to the insurance money and we're going to let you go forward. I mean, that's how somebody reading it would think that it was to proceed. And I don't think they fully waived their right to anything but insurance proceeds because the end of the order specifically states that if it turns out there's not coverage, they have the right to come back to the bankruptcy court for further relief. It's an atypical order, I think, in that sense in that typically you see a creditor or a plaintiff in that situation waive their rights to anything but insurance proceeds and will not come back after the debtor for anything. This order specifically allowed them to come back if, in fact, there was not insurance. If there's no coverage, that's different from being, but then they were agreeing to come back to the bankruptcy court. That's true, but I don't know that there's anything in 362 that states having insurance or not having insurance is one of the grounds looked upon to allow retroactive relief unquestionably when there has been violation of the stay. And I think that's part of the issue here is that the stay, as has been interpreted by this circuit and others, the stay is to protect the debtor, although to balance the rights of the creditor. And what this court has previously held, whether there are differences in facts and easily or not, but that if there is a violation of that stay, there are only limited circumstances in which that stay or that violation should be validated. This does not fit one of those exceptions. But it was a stipulated order, so the judge didn't go through the analysis. No, and I would agree with that. But it was a stipulated order, and whether it's an error on behalf of both parties, perhaps, I still don't see how you can obtain the relief that they're claiming they received when that's not what they asked for. And when the bankruptcy attorney for SVS specifically says in my conversations with counsel for Cox, it was always represented to me that it was a pre-petition suit. I would not have agreed to this order if I had known it was a post-petition suit. So that goes to, I mean, the order itself says vacate, which is neither annul nor lift. So, you know, I think it's ambiguous. And shouldn't the judge have figured out what it meant? And if it's not on its face to look at that affidavit and hear from counsel or have some evidence? And perhaps he would have if anyone had raised any of those issues beforehand. But none of those issues were raised before the district court. But counsel was arguing, if I understand it correctly, even before the Rule 59, he was arguing that that's what this order does. That this vacates and permits to resume. That it wasn't lifting the stay, it was annulling the stay. And I don't think that the court's ruling, the trial court, I don't think he disregarded that outright. I think what the trial court said was once this stay is lifted, they should have refiled under the prescription uneasily. And they failed to do so. It still did not validate the complaint. And I guess that's the question. It still did not validate the complaint. Let me ask you this question. Supposing that the suit was filed when it was filed. And then a motion is filed to dismiss the tort suit because it was filed while there was a stay in effect. Now, what does that do to a person in the plaintiff's position relative to the statute of limitations? He filed, albeit with a stay in place, but within the statute of limitations. Now, is that stay in effect toll the statute of limitations so that after the bankruptcy was completed, his tort suit could continue? I think under section 108, once the stay is lifted, he has 30 days to refile if he had violated. Because the initial complaint is void. So the statute obviously would have run during the time of the bankruptcy. And I think that's why there's that grace period that's allowed under section 108, to allow for an extra 30 days after the stay is lifted or ends in order to refile the complaint. My question is, the 30 days I understand, but the new suit, of course, would have been filed way beyond the statute of limitations. But because the original void suit was filed within the statute of limitations, would the plaintiff still be able to resist a motion to dismiss on statute of limitations ground? I think he would have if he had filed the new suit within 30 days of the bankruptcy ending. Absolutely. And I would not dispute that. I think my time is up. Thank you. Thank you. I'd like to address Judge White's question about what if it is ambiguous on its face. We don't believe, obviously, that it is. But the judge in its judgment, Judge Thapar, really didn't drill down on the difference between this case and Easley. And that, in part, is why the plaintiff filed the motion to alter amendment. And we asked for a hearing on the motion for alter amendment. And then, in fact, the plaintiff, before the judgment was even entered, asked for a hearing on this matter. So I think if the court is inclined to rule that this is ambiguous and there needs to be more argument or there needs to be a factual record developed, I think a remand would be appropriate in that circumstance. So you said you asked for a hearing what? We asked for a hearing after we filed the response to the motion to dismiss. Cox asked for a hearing. And the court didn't grant the hearing. And then, also, when we filed the motion to alter or amend the judgment, we asked for a hearing there as well. And the court did not grant a hearing. And the hearing that you asked for before decision was what? It's not really clear from the record what the hearing would have been, but it would have been with regard to this motion to dismiss because that was the only matter pending. Okay. And, again, what do you do with the fact that the motion in the bankruptcy court didn't use the word annul? Well, again, what's controlling here isn't the motion itself. It's the order. The bankruptcy, we could have asked for a claim in the bankruptcy court and not even asked for a motion or not even asked for annulment or not even asked for stay relief. We could have gone to the bankruptcy court and said we just want a claim in the bankruptcy case, Your Honor, just like in Easley. And if the court said, no, I'm not going to give you a claim, but I'm going to annul or I'm going to vacate so you can pursue your cause in Kentucky court, then we'd be in the same place that we are. So I really think what's in the motion is almost irrelevant because we have a court order that says that the stay is vacated and we can resume. I would disagree with the appellee's point that there needs to be some sort of finding and every time there's an annulment, there needs to be some sort of finding of inequitable conduct on the part of the debtor because otherwise you would never have any of these stipulated orders. The danger there is that if you need a finding of inequitable conduct, the debtor would never consent to that. So you would never get a consent order annulling the stay. Let me ask you the same question I asked your opponent a moment ago. If you, instead of trying to get relief from the stay, when you got the motion to dismiss of your tort case and you found out that there was a stay, if you had just done nothing but let the bankruptcy play out and then within the 30-day window when the stay was listed, filed the suit again, would you have been able to do that? I'm sorry. I'm not sure I'm understanding. Well, instead of trying to get the stay lifted, if you had just waited for the bankruptcy to play out, would you still have been able to file your tort suit within the 30-day window? No, Your Honor. I don't believe we would have. And the reason why? Because I think the Chapter 11 plan would have provided that all pre-petition claims need to be provided for in the plan, and if they're not provided for in the plan, then the claimants don't have an action. That's the purpose of the Chapter 11 plan, is to handle all pre-petition debt. So if you're not treated in the plan, or if you're not allowed to proceed in state courts... That includes unliquidated tort claims? Yes, it does. A claim is defined very broadly, as we cited in our briefs. A claim is defined as a right to payment, whether or not that's disputed or contingent. And here, we definitely have either a disputed or contingent right to payment. So you had to proceed as you did, and get some relief from the stay, or you would have lost your cause of action? Absolutely. And to the credit of the appellee, within, I think, nine days of their being served with a complaint, they gave us notice of the stay. So we had no choice but to go before the bankruptcy court. In fact, if we hadn't, we would have been sanctioned, probably, by the bankruptcy court. Thank you. Thank you. The case is submitted. I believe Judge White has a question to raise here. I notice that Mr. Palco from our settlement office is present, and I was wondering whether you folks ever met with the office, or attempted to resolve this? We did. We had a telephonic mediation, yes. Okay. Well, I mean, we had a mediation. So, I don't know, maybe you should talk on the way out.